NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0473n.06

Nos. 11-3894/3925

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 13, 2013
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| SUSAN B. ANTHONY LIST (No. 11-3894) and COALITION OPPOSED TO ADDITIONAL SPENDING & TAXES (No. 11-3925),<br><br>    Plaintiffs - Appellants,<br><br>    v.<br><br>STEVEN DRIEHAUS; JOHN MROCZKOWSKI; BRYAN FELMET; JAYME SMOOT; HARVEY SHAPIRO; DEGEE WILHELM; LARRY WOLPERT; PHILIP RICHTER; CHARLES CALVERT; OHIO ELECTIONS COMMISSION; JON HUSTED,<br><br>    Defendants-Appellees. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO<br><br>OPINION |

**Before:**   ROGERS and STRANCH, Circuit Judges; PEARSON, District Judge.\*

**JANE B. STRANCH, Circuit Judge.**   The Ohio Elections Commission is an independent agency charged with enforcing the state's campaign-practices laws. This includes regulating false and misleading political statements. Shortly before the 2010 general election, then-Congressman Steven Driehaus filed a complaint with the Commission against Susan B. Anthony List (SBA List), a pro-life advocacy organization that planned to run advertisements against him. SBA List then initiated this suit seeking declaratory and injunctive relief against Driehaus, the Commission's

---

\*The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

*Susan B. Anthony List, et al v. Driehaus*
Nos. 11-3894/3925

members, and the Ohio Secretary of State. The Coalition Opposed to Additional Spending and Taxes (COAST), an anti-tax advocacy organization, filed a similar federal action, although no state proceedings had been brought against it. After the election, Driehaus and SBA List chose to terminate the state proceeding before the Commission adjudicated the dispute. The district court then consolidated the two federal suits and dismissed all claims for lack of subject matter jurisdiction. Looking only to whether the claims of SBA List and COAST are ripe, we **AFFIRM**.

## I.  BACKGROUND

On March 23, 2010, President Obama signed into law the Patient Protection and Affordable Care Act, 124 Stat. 119, commonly known as the Affordable Care Act. SBA List, a nonprofit organization that advances pro-life causes, opposes the legislation because it believes that its provisions permit taxpayer-funded abortion. In the lead-up to the 2010 general election, SBA List wanted to put up a billboard in then-Congressman Driehaus's district criticizing his vote in favor of the Act. The planned billboard read: "Shame on Steve Driehaus! Driehaus voted FOR taxpayer-funded abortion." But the billboard never went up because the advertising company that owned the billboard space refused to put up the advertisement after Driehaus's counsel threatened legal action against it.

On October 4, 2010, Driehaus filed a complaint with the Ohio Elections Commission against SBA List claiming that the advertisement violated two sections of Ohio's false-statement statute. The first states that "[n]o person, during the course of any campaign for nomination or election to public office or office of a political party, by means of campaign materials . . . shall knowingly and with intent to affect the outcome of such campaign . . . [m]ake a false statement concerning the

*Susan B. Anthony List, et al v. Driehaus*
Nos. 11-3894/3925

voting record of a candidate or public official." Ohio Rev. Code § 3517.21(B)(9). The second section prohibits posting, publishing, circulating, distributing, or otherwise disseminating "a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not, if the statement is designed to promote the election, nomination, or defeat of the candidate." *Id*. § 3517.21(B)(10).

A word about the Commission's procedures is critical to understanding what happened next. Ohio law allows "any person" to file a complaint with the Commission alleging a violation of certain election laws. *Id.* § 3517.153(A). If the Secretary of State knows of such a violation, he must lodge a complaint. *Id.* § 3501.05(N)(2). A complaint filed shortly before an election is referred to a panel of Commission members for an expedited hearing to determine whether "probable cause" exists for the full Commission to hear it. *Id.* § 3517.156(A). That panel must refer the complaint to the full Commission if it finds probable cause, dismiss the complaint if it does not, or request a Commission attorney to investigate the matter further if the evidence is insufficient to decide. *Id.* § 3517.156(C). If the Commission finds a violation by clear and convincing evidence, it may refer the matter to a prosecutor, *id.* § 3517.155, although a prosecutor is not obligated to act. The full Commission or probable-cause panel may also determine that a complaint is frivolous and order the complainant to pay reasonable attorney's fees, as well as the Commission's own costs. *Id*. Finally, a party may appeal an adverse final decision of the Commission in state court. *Id.* § 3517.157(D).

On October 14, 2010, a three-member panel voted 2-1 to find probable cause and referred Driehaus's complaint to the full Commission. A hearing was set for two weeks later and the parties began discovery. On October 18, SBA List filed this case in federal district court seeking declaratory

*Susan B. Anthony List, et al v. Driehaus*
Nos. 11-3894/3925

and injunctive relief from enforcement of the Ohio statutory scheme, as well as a temporary restraining order to enjoin the Commission proceeding. The district court denied the motion and stayed the federal action under *Younger v. Harris*, 401 U.S. 37 (1971). This court upheld the stay. *See Susan B. Anthony List v. Steven Driehaus, et al.*, No. 10-4320 (6th Cir. Oct. 28, 2010) (order).

Driehaus and SBA List agreed to postpone the full Commission hearing until after the election on November 4. When Driehaus lost his bid for re-election, he filed a motion to withdraw his Commission complaint. SBA List consented to this and the Commission proceedings ceased on December 2, 2010. Four days later, the district court lifted its stay. On December 21, SBA List amended its complaint to allege that the Commission proceedings following Driehaus's complaint chilled its speech and associational rights. This could happen again, SBA List alleged, if "[a]ny complainant" decided to "hale" the organization before the Commission. SBA List stated its intent to engage in "substantially similar activity in the future" and offered that Driehaus "may run for Congress again." In June 2011, Driehaus and his family moved to the African nation of Swaziland for a two-and-a-half-year appointment with the Peace Corps.

Like SBA List, COAST also wished to criticize Driehaus for his vote in favor of the Act. It intended to send out emails, write blogs, and disseminate press releases with messages similar to SBA List's. In one communication, COAST planned to say this: "Despite denials, Driehaus <u>did</u> vote to fund abortions with tax dollars. Ohio Elections Commission complaint filed to obscure undeniable truth of his health care vote." COAST filed this federal suit on October 27, 2010, against only the Commission. It claimed that it did not publish these messages because its knowledge of the Commission proceedings against SBA List chilled its ability to speak. COAST did not allege that

*Susan B. Anthony List, et al v. Driehaus*
Nos. 11-3894/3925

it was involved in any Commission proceeding, or that the Commission enforced or threatened to enforce any of the challenged laws against it.

The district court consolidated the two cases and granted the defendants' motions to dismiss. As to SBA List's suit, the motions made by the Commission and Driehaus were granted on standing, ripeness, and mootness grounds, and the Secretary's motion was granted on the bases of ripeness and Eleventh Amendment immunity. As to COAST's suit, the Commission's motion was granted based on standing and ripeness. SBA List and COAST now appeal these judgments. We resolve both appeals in this decision.

## II.  DISCUSSION

**A.  Ripeness of SBA List's claims**

Because the Commission acted on Driehaus's 2010 complaint, but did not reach a final decision or penalize SBA List, this case raises questions regarding SBA List's standing to sue, and whether its claims are moot or ripe for review. *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 491 (6th Cir. 1995). These doctrines "all originate in Article III's 'case' or 'controversy' language," which forms the basis of federal-court jurisdiction. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "We review jurisdictional challenges based on standing, ripeness, and mootness *de novo*." *Miller v. City of Cincinnati*, 622 F.3d 524, 531 (6th Cir. 2010). "As there is no obligation to favor one of these justiciability doctrines over the other and as none of these questions goes to the merits of the case, we may address them in any sequence we wish." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (citation omitted). Here, as in *Warshak*, "[w]e start—and end—with ripeness." *Id*.

*Susan B. Anthony List, et al v. Driehaus*
Nos. 11-3894/3925

Ripeness "'is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Id.* (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). It prevents federal courts from "entangl[ing]" themselves in a "premature adjudication" of legal matters, even ones involving constitutional issues, "that may with time be satisfactorily resolved at the local level and that may turn out differently in different settings." *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010) (citations and internal quotations marks omitted). In its broadest formulation, the ripeness doctrine poses "a question of timing" and counsels against resolving a case that is "anchored in future events that may not occur as anticipated, or at all." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997).

"Three factors guide the ripeness inquiry: (1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012) (internal quotation marks omitted).

**1. Likelihood of harm**

In the First Amendment context, the likelihood-of-harm analysis focuses on "'how imminent the threat of prosecution is and whether the plaintiff has sufficiently alleged an intention to refuse to comply with the statute.'" *Id*. (quoting *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002)). Although a plaintiff is not required to "'expose himself to actual arrest or prosecution'" before challenging the constitutionality of a statute, *id.* at 296 (quoting *Steffel v. Thompson*, 415 U.S. 452,

*Susan B. Anthony List, et al v. Driehaus*
Nos. 11-3894/3925

459 (1974)), he must nonetheless show "a credible fear" that it will be enforced against him, *Norton*, 298 F.3d at 554. We first consider the imminence of the threat of prosecution against SBA List at the hands of the Commission members, Secretary Husted, and Driehaus. We then evaluate the sufficiency of SBA List's alleged intent to disobey the challenged statute.

SBA List argues that its ability to speak is chilled by the possibility that the Commission will pursue future proceedings against it for speech—similar to the Driehaus ads—in which it plans to engage. That the billboard never went up, SBA List maintains, shows that its speech already has been abridged and will be diminished again in the future. SBA List also points to the Commission's probable-cause finding and the existence of Ohio's false-statement statute. Taken together, SBA List says, this evidence shows that if it desires to engage in similar speech, an imminent threat of prosecution forces it to choose between risking further harm or abandoning the speech altogether.

We see it differently. In the normal course, we have little trouble finding a threat of future injury if a plaintiff has been subjected to the challenged action. *Briggs*, 61 F.3d at 492 (quoting dicta from *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992)). However, our precedent in the standing context (which overlaps this part of the ripeness analysis) makes clear that a prior injury, without more, is not enough to establish prospective harm:

> Even *when* a party has been unlawfully sanctioned in the past, we have heeded the Supreme Court's directive that past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects. While previous sanctions might, of course, be evidence bearing on whether there is a real and immediate threat of repeated injury . . . where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief.

*Susan B. Anthony List, et al v. Driehaus*
Nos. 11-3894/3925

*Fieger v. Mich. Sup. Ct.*, 553 F.3d 955, 966 (6th Cir. 2009) (citations and internal quotation marks omitted) (ellipses in original); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). This is equally true when a plaintiff alleges that his injury is chilled speech. *See Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602, 609 n.7 (6th Cir. 2008) ("We make no distinction . . . between allegations of a past-experienced chill and allegations of chill seeking forward-looking relief. Without more, both will fail to constitute an injury-in-fact."). "'[S]ubjective chill' alone—without some other indication of imminent enforcement—d[oes] not constitute injury in fact." *Berry*, 688 F.3d at 296.

The prior harms to which SBA List points—the billboard rejection and the probable-cause hearing—do not help it show an imminent threat of *future* prosecution. The rejected billboard is largely irrelevant. SBA List was unable to place the billboard because the private company that had committed to renting it to SBA List blinked when Driehaus's counsel threatened legal action. The Commission had no role in this failed transaction, and SBA List cannot lay this failure at the Commission's feet to show that its fear of future enforcement is reasonable.

Neither does the probable-cause hearing show an imminent threat of prosecution based on prior enforcement, as the Commission never found that SBA List violated Ohio's false-statement law. Statutorily, the preliminary hearing to which SBA List was subjected decides only "whether probable cause exists for the full commission to determine *whether a violation of Ohio election law has occurred*." Ohio Admin. Code § 3517-1-11(A) (emphasis added). A probable-cause determination is not a "concrete application of state law" that enables SBA List to claim that the law has been enforced against it. *See Brown v. Hotel & Rest. Emps. & Bartenders Int'l Union Local 54*,

*Susan B. Anthony List, et al v. Driehaus*
Nos. 11-3894/3925

468 U.S. 491, 512 (1984) ( "Because the Commission never imposed this sanction . . . we are presented with no concrete application of state law.  The issue is hence not ripe for review."). Like an agency's "reason to believe" determination that a violation may have occurred, the Commission's conclusion that probable cause exists serves only to start proceedings that may—or may not—find an infraction.  *See FTC v. Standard Oil of Cal.*, 449 U.S. 232, 241–42 (1980).  A probable-cause determination is neither a "definitive statement of position," nor a "definitive ruling or regulation" that establishes an imminent enforcement threat.  *Id*. at 241, 243.

Attempting to escape this conclusion, SBA List argues that a final Commission adjudication is not required to show a threat of future harm based on past enforcement activity.  It leans heavily on *Briggs* and *Berry* to support its argument that the Commission's acts are sufficient to demonstrate imminent injury.  In *Briggs*, after determining that a candidate had violated an election law, the Commission declined to refer the matter for prosecution but said it would consider the violation in future investigations involving the candidate.  61 F.3d at 492–93.  Briggs "present[ed] a sufficient future threat of injury" to enable her to challenge the statute's constitutionality for three reasons: the Commission actually found a violation, Briggs planned to run for office in Ohio again, and the Commission's policy of using past violations to evaluate later complaints meant the finding had future effect.  *Id.* at 492.  *Berry* involved an attorney's challenge to an ethics rule that the state bar association, following an investigation, said he violated.  Because the bar association was unequivocal that his conduct violated the rule and "instructed [him] to avoid such conduct in the future," we held that the threat of enforcement hung over the attorney and "more than subjectively chilled" his speech.  688 F.3d at 297.

*Susan B. Anthony List, et al v. Driehaus*
Nos. 11-3894/3925

Neither *Briggs* nor *Berry* shows that the Commission's past actions make it likely that the Commission will threaten SBA List with prosecution anytime soon. The Commission's probable-cause determination was not a final adjudication, a finding of a violation, or even a warning that SBA List's conduct violated Ohio law. While it green-lighted further investigation, the Commission expressed no opinion about the application of Ohio law to SBA List's speech. SBA List does not suggest that the probable-cause finding would carry any weight in the future—in this hearing or any other. And its contention that a preliminary assessment that a violation *may* have occurred establishes the threat of future harm finds no support in our cases. No sword of Damocles dangles over SBA List to justify its fears. *See Briggs*, 61 F.3d at 493.

SBA List's claim also suffers from another problem peculiar to the Commission's statutory powers—namely, that the Commission cannot initiate proceedings, but instead must wait for someone to bring a complaint. *See* Ohio Rev. Code § 3517.153(A). This hardly erects an formidable barrier to enforcement, but it does make its likelihood rather speculative. Who is likely to bring a complaint to set the wheels of the Commission in motion? SBA List hazards a guess: "any complainant," it speculates. At oral argument, SBA List was marginally more specific: "some citizen in Ohio who supports Obama." If such conjecture could establish a credible threat of future harm, *any* plaintiff could challenge Ohio's election laws based on *any* intended speech. Article III's "case" or "controversy" requirement does not stretch that far. SBA List has not shown that it labors under an imminent threat of prosecution by the Commission.

SBA List's claim that it credibly fears that Secretary Husted will enforce the false-statement law against it doesn't fare much better. The organization points to the Secretary's statutory duty to

*Susan B. Anthony List, et al v. Driehaus*
Nos. 11-3894/3925

file a Commission complaint if he "has or should have knowledge of" an election-law violation. *Id*. § 3501.05(N)(2). And it warns that Secretary Husted has "exercised his authority" to enforce false-statement claims, and has offered "no indication that he intends to discontinue doing so."

But SBA List does not suggest that the Secretary has ever attempted to enforce the law against the type of speech it intends to make. And more, Secretary Husted has declined to file a Commission complaint against *the actual statement* that gave rise to this litigation during the two-year period the law allows. *See id.* § 3517.157(A). SBA List "can point to no action or statement" that suggests Secretary Husted intends to regulate its speech, making it "far from clear that any harm will occur . . . in the future." *Adult Video Ass'n v. U.S. Dep't of Justice*, 71 F.3d 563, 568 (6th Cir. 1995).

We finally consider whether SBA List's fear of imminent enforcement at the hand of Driehaus is credible. Driehaus's 2010 complaint tells us two things. First, Driehaus believed that SBA List violated the false-statement law. Second, Driehaus—just like "any person"—was able to file a complaint and so trigger enforcement proceedings. SBA List asks us to make a third inference—namely, that Driehaus's complaint shows his willingness to file complaints in the future, posing a continuing threat to SBA List.

This is a stretch. Driehaus remains in Africa on a multi-year assignment with the Peace Corps. He has no cause to complain about allegedly false election ads lobbed against him. SBA List says Driehaus may run for office again, but the evidence is thin at best.[1] It is also far from certain

---

[1] SBA List cites to a newspaper article that reads:
> Asked if there was anything he'd miss about Capitol Hill, Driehaus acted as if he'd

*Susan B. Anthony List, et al v. Driehaus*
Nos. 11-3894/3925

that some future Driehaus candidacy would require the same response from SBA List. Without incumbency, for example, Driehaus may be too insignificant a candidate to attack. Or SBA List may decide that the Act's purported funding of abortions is no longer a timely or effective political message. The degree of speculation required to consider Driehaus a present threat is fatal to SBA List's claimed fears.

The next step of the likelihood-of-harm analysis focuses on whether SBA List has "sufficiently alleged an intention to refuse to comply with the statute." *Berry*, 688 F.3d at 298 (internal quotation marks omitted). The statutes SBA List challenges apply only to a person who "knowingly" makes a false statement or disseminates a statement "knowing [it] to be false or with reckless disregard of whether it was false or not." Ohio Rev. Code § 3517.21(B)(9), (10). SBA List would be closer to establishing ripeness if it had alleged that it intends to violate Ohio's false-statement law.

But SBA List does not say that it plans to lie or recklessly disregard the veracity of its speech. Instead, it alleges the very opposite, insisting that the statement it made and plans to repeat—that the Act allows for taxpayer-funded abortions—is factually true. An unqualified intention to comply with a statute whose application depends on "specific facts demonstrating that plaintiffs acted with the

---

been asked if he'd miss a toothache. He laughed a short, derisive laugh.
"No," said Driehaus, who was defeated after one term. "It's a job. I mean, I lost an election. I move on . . . . I'm not real stuck on being a member of Congress."
Not exactly a ringing endorsement for the place. So, would he ever run again?
"I might," he said.
David A. Fahrenthold, *Between losing and going home: The House basement*, Washington Post, Dec. 9, 2010, at A1.

*Susan B. Anthony List, et al v. Driehaus*
Nos. 11-3894/3925

requisite . . . intent" may preclude a party's ability to show that "the alleged harm will ever come to pass." *Norton*, 298 F.3d at 554. SBA List's insistence makes the possibility of prosecution for uttering such statements exceedingly slim, particularly because SBA List can only be liable for making a statement "knowing" it is false.

It also means the fear animating SBA List's request for prospective relief is the risk of a false prosecution. But SBA List offers no basis for this fear, leaving us to speculate about the reasons. "Not only is that fear misplaced, it's inadequate to generate a case or controversy the federal courts can hear." *Glenn v. Holder*, 690 F.3d 417, 422 (6th Cir. 2012). SBA List has not sufficiently alleged an intention to disobey the statute. Given that SBA List has neither done this, nor demonstrated an imminent threat of prosecution at the hands of any defendant, it cannot show a likelihood of harm to establish that its challenge is ripe for review.

### 2. Development of factual record

The factual record here is not sufficiently developed to review SBA List's claims. Ohio has not applied its law to SBA List's speech. The Commission has not found that SBA List violated the false-statement law. And no prosecutor has taken any action upon any Commission referral. SBA List says it seeks to engage in substantially similar speech in the future. Allowing such a case to proceed would require us to guess about the content and veracity of SBA List's as-yet unarticulated statement, the chance an as-yet unidentified candidate against whom it is directed will file a Commission complaint, and the odds that the Commission will conclude the statement violates Ohio law. A court cannot decide SBA List's claims on this threadbare record without engaging in precisely the kind of conjecture that the ripeness doctrine bars.

*Susan B. Anthony List, et al v. Driehaus*
Nos. 11-3894/3925

SBA List counters that none of these details are relevant because the mere possibility that it ultimately could be sued for engaging in protected speech is factually sufficient to make this matter ripe. That is not correct. SBA List's challenge to the applicability of a statutory scheme to its conduct would benefit from knowing what the scheme prohibits and what it permits. *Ammex, Inc. v. Cox*, 351 F.3d 697, 707–08 (6th Cir. 2003). Some cases surely involve pure questions of law in which "[n]o factual development can change what the statute bans and what it protects." *Macaw*, 132 F.3d at 291. But this is not one of them. And even if SBA List presented a "purely legal question," it "remains a purely *speculative* legal question . . . that may be answered differently in different settings." *Warshak*, 532 F.3d at 528. The current factual record is insufficient to permit review.

### 3. Hardship if judicial review is denied

Withholding judicial relief will not result in undue hardship to SBA List. No complaint or Commission action is pending against SBA List and, for the reasons discussed above, SBA List has not demonstrated an objective fear of future enforcement. In fact, SBA List's conduct after Driehaus filed the complaint in 2010 suggests that its speech has not been chilled.

Recall that the only speech SBA List alleges it was unable to engage in was putting up the billboard. Apart from this, SBA List continued to actively communicate its message about Driehaus' voting record. SBA List announced on October 19, 2010, for example, its plan to air radio ads claiming that Driehaus voted for taxpayer-funded abortion. And after the district court denied SBA List's motion for a temporary restraining order, the organization issued a press release stating that Driehaus did not want his constituents to hear that he voted for taxpayer-funded abortion. Later still,

*Susan B. Anthony List, et al v. Driehaus*
Nos. 11-3894/3925

appearing on television, SBA List's president said that even if the Commission prevented SBA List from putting up its billboards, "we will double down and make sure that our message floods his district. We've got radio ads going out all across his district. We will simply not be intimidated into silence."

This is not the sound of chilled speech or a silenced speaker. "SBA List clearly has not been enjoined from any speech, and all indications are that its speech continues to be robust." *Susan B. Anthony List*, No. 10-4320, at *4. On these facts, there is no hardship where the evidence suggests SBA List is not deterred from engaging in the very conduct that it claims is encumbered. *See Norton*, 298 F.3d at 555. Withholding judicial review will not result in undue hardship to SBA List.

To conclude: the district court correctly determined that SBA List's challenge is not ripe for review and properly dismissed it for lack of subject matter jurisdiction.

**B. Ripeness of COAST's claims**

COAST's claims are somewhat different from those of SBA List, but these differences do not change the analysis. COAST has never been involved in a Commission proceeding and no individual has enforced or threatened to enforce the challenged laws against it. Its claims stemming from the mere possibility that Ohio law will be pressed against it are even more speculative than SBA List's. The preceding analysis compels the conclusion that COAST's claims are unripe.

### III. CONCLUSION

We **AFFIRM** the district court's decision to dismiss these suits.